IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BIG POP'S FRESH LOUISIANA SEAFOOD, LLC, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | Case No. 6:20-cv-03350-MDH |
| BASS PRO, LLC, | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 45). Defendant moves the Court for judgment as a matter of law on Plaintiff's sole claim for breach of contract arguing that the undisputed facts demonstrate Defendant acted in good faith ordering its alligator meat needs from Plaintiff and as a result Plaintiff cannot establish a breach of Defendant's obligations under the terms of the parties' agreement. Plaintiff opposes the motion arguing the contract is unambiguous and Defendant failed to purchase the obligated amount of alligator meat per year as set forth in the terms of the contract. The motion is ripe for review.

## BACKGROUND

In 2016, plaintiff Big Pop's Fresh Louisiana Seafood, LLC and defendant Bass Pro entered into a four-year Food Services Agreement (the "Agreement"), under which Defendant would purchase tenderized alligator meat from Plaintiff in accordance with the terms of the Agreement and the Product, Pricing and Commercial Terms sheet attached to the Agreement as Exhibit A (the "Term Sheet"). Defendant, a retailer of hunting, fishing, and camping, and related outdoor recreation merchandise, operates restaurants in some of its retail stores throughout the country and used Plaintiff's alligator meat to prepare appetizers and entrees sold in its restaurants.

1

Plaintiff's sole operation consisted of selling alligator meat through its website and supplying Defendant with the product. Under the Agreement, Plaintiff was the exclusive provider of the specified alligator meat to Defendant. Plaintiff received the alligator meat product processed, packaged, and ready for sale from D&T Crawfish, LLC. Plaintiff did not touch the alligator meat product; rather, D&T would deliver the alligator meat processed, cut up, packaged, labeled, and boxed up directly to a warehouse operated by a company called Webmatter.

The Agreement states, in part, Supplier is the exclusive provider of the Products and Bass Pro has the obligation to order and purchase from Supplier a minimum of 150,000 pounds of Products per year during the Term of the Agreement. Pursuant to the terms of the Agreement, Defendant's agreement to purchase any specific quantity of alligator meat would be documented in purchase orders issued by Defendant's distributor, US Foods, Inc. ("USF"), based on Defendant's alligator meat needs.

Plaintiff never formally objected to any USF purchase orders. The Agreement required Plaintiff to ship the alligator meat product to the delivery point specified by USF in each purchase order. Under the Agreement, both Defendant and USF maintained the right to refuse payment for any alligator meat not specified in a purchase order. Plaintiff obtained spreadsheets from USF each week for the purpose of keeping track of how much alligator meat Bass Pro was purchasing. This information was used by Plaintiff to forecast Bass Pro's alligator meat needs so that Plaintiff could inform D&T how many alligator carcasses to obtain and how much alligator product to process and package for sale. Plaintiff maintained adequate alligator meat inventory to satisfy the expected volume requirements of Defendant and, using the forecasting information, Plaintiff would work with D&T to try to keep approximately 20,000 pounds of alligator meat in storage at a time. Plaintiff did not have a contract with D&T requiring Plaintiff to order any certain amount

of alligator meat and Plaintiff only had to pay D&T for the alligator meat D&T processed for Plaintiff.

Defendant did not take alligator meat off of its menu or try to stop selling alligator meat during the term of the Agreement. However, during the term of the Agreement, Bass Pro made the business decision to close 27 out of 37 of its restaurants in light of the COVID-19 pandemic, which Bass Pro did not anticipate at the time is entered into the Agreement. At the time the parties entered into the Agreement, neither party could have predicted the COVID-19 pandemic or its impact on restaurant operations and sales.

At no point during the term of the Agreement did Defendant's annual volume requirement of alligator meat reach 150,000 pounds. Plaintiff knew after the first year of the Agreement that Defendant had not ordered 150,000 pounds of alligator meat. Plaintiff never sent a written notice of default with request for termination of the Agreement during the term of the Agreement.

Plaintiff's lawsuit alleges Defendant failed to purchase the minimum 150,000 pounds of alligator meat as set forth in the terms of their Agreement.[1] Defendant moves for summary judgment arguing it had no obligation to purchase a specific amount of alligator meat over the four years and that Plaintiff cannot establish damages resulting from any alleged breach.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359

---

[1] Plaintiff alleges the first year Defendant ordered 93,256 pounds of alligator meat; the second year 81,984 pounds; the third year 67,200 pounds; and the fourth year 40,992 pounds. Plaintiff alleges as a result Defendant failed to purchase at least 316,568 pounds of meat during the full term of the Agreement. The Agreement set forth a price of $8.70 per pound.

3

(8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

### A. The Agreement

The parties do not dispute that the Food Services Agreement at issue is governed by Delaware law. Defendant argues the agreement is a requirements contract governed by Section 2-306(1) of the UCC, as adopted by Delaware.

Section 2-306(1) provides:

A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in

the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

6 Del. Code § 2-306(1) (emphasis added).

"A requirements contract is primarily designed to provide a buyer with flexibility in operating its business." *Techn. Assistance Int'l, Inc. v. U.S.*, 150 F.3d 1369, 1371-72 (Fed. Cir. 1998). Defendant argues that the parties' Agreement falls under this definition because Defendant agreed to purchase all of its needs for alligator meat from Plaintiff for an agreed upon price during the term of the Agreement. Defendant further argues under a requirements contract, the quantity of goods to be purchased is determined solely by the buyer's good faith requirement and that here Defendant was purchasing solely on its good faith requirements and acted in good faith.

The Court finds any alleged good faith requirement analysis is unnecessary. Contrary to Defendant's argument, the terms of the Agreement set forth a specific quantity to be purchased - a *minimum* of 150,000 pounds of alligator meat per year during the term of the Agreement. The Agreement specifically states:

> **1.1 General Obligations**
>
> (a) This Agreement sets forth the terms and conditions on which Supplier will supply to Bass Pro the food products specified in <u>Exhibit A</u>, and any other products that may be agreed in writing by the Parties from time to time (collectively, "Products").
>
> (b) Supplier is the exclusive provider of the Products; Bass Pro has the obligation to order and purchase from Supplier a minimum of 150,000 pounds of Product per year during the Terms of the Agreement.

Further, in Exhibit A to the Agreement, Product, Pricing, and Commercial Terms, the Agreement further sets forth "**Bass Pro volume minimum requirements**" and identifies 150,000 pounds as the requirement. The Exhibit further states that Defendant will provide Supplier with revised expected volume requirements if they change at any time during the term of the Agreement, but it

5

is clear that the minimum requirement is set. The Product Price is set forth with a condition that if Defendant exceeds the minimum pounds at certain levels that the price per pound will decrease. However, there are no terms in the Agreement, or the Term Sheet, that contradict Defendant's obligation to purchase the minimum 150,000 pounds per year.

Wherefore, Defendant's motion for summary judgment moving the Court to find the Agreement is a requirements contract is denied.

### B. Damages Resulting from Any Alleged Breach

Defendant also moves for summary judgment arguing Plaintiff cannot establish damages resulting from any alleged breach of the contract. Defendant argues even if Plaintiff could establish Defendant breached its obligations under the Agreement, Plaintiff cannot establish damages. Defendant contends that all income attributable to the Agreement was recognized by either Larry or Ryan Burt individually and not by the named Plaintiff. Defendant further argues because Plaintiff had no equipment, no employees, did not own the warehouse, and did not "touch" the alligator meat it did not incur any expenses. Defendant argues as a result Plaintiff cannot show lost earnings or other damages.

Plaintiff opposes this argument stating that Defendant fails to cite any authority to support this argument. Plaintiff states income and expenses it incurred were realized in Schedule C's filed by Burt and his son and that Plaintiff is a limited liability company that has power to sue and be sued.

The Court finds Defendant's argument regarding whether Plaintiff is the real party in interest unpersuasive. The amount of damages, if any, incurred by Plaintiff is a factual issue and not an issue to be resolved on summary judgment.

## CONCLUSION

After a review of the record before the Court, and after considering the facts in a light most favorable to the Plaintiff, the Court hereby **DENIES** Defendant's motion for summary judgment for the reasons set forth herein.

**IT IS SO ORDERED.**

Date: April 5, 2022

    /s/ Douglas Harpool
Douglas Harpool
United States District Judge